**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DAVID K. BROYLES, *et al.*, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-08-02320 |
| § | |
| STATE OF TEXAS, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

The plaintiffs are residents and nonresident property owners in the City of Weston Oaks,[1] a gated community in Fort Bend County, Texas. They sued the State of Texas, Fort Bend County, the Weston Lakes Property Owners' Association ("WLPOA") and its individual trustees, the Weston Lakes Community Incorporation Project Committee (the "Incorporation Committee"), and the Citizens' Committee for the Incorporation of Weston Lakes ("Citizens' PAC"). The plaintiffs also sued Clifton Aldrich, the chairman of the Incorporation Committee and the Citizens' PAC. The plaintiffs' suit raised constitutional and federal and state statutory challenges to a municipal incorporation election held on May 10, 2008, in which the community of Weston Lakes and certain adjacent land were converted into a Type B General-Law Municipality called the City of Weston Lakes. On March 31, 2009, this court dismissed the constitutional and federal statutory claims with prejudice, denied the plaintiffs' motion for declaratory and injunctive relief, and dismissed the state

---

[1] The plaintiffs are David K. Broyles, Shellie Galik Broyles, Frederick B. Howden IV, Eric Jones, Stacey Jones, Brian E. Koons, James R. McKean, Jerry Mosbacher, James E. Ritter, Jeannell M. Ritter, Cheryl Stalinsky, Lisa H. Theut, Michael S. Cooper, Laura G. Gonzales, Willie Irvin, William Patrick McArthur, Jessie Fay Oliver, Bernice F. Gilmore, Charles D. McWilliams, Brian C. Kimmel, Martin G. Parr, and James A. Winne, III.

statutory claims without prejudice to refiling in state court. This court ordered the parties to identify any remaining issues or file a proposed order of dismissal.

No party has identified any remaining issues that this court must address. The plaintiffs, however, have moved for reconsideration of certain portions of this court's order. Some of the defendants have moved for attorneys' fees.

The following motions are pending:

- The plaintiffs have moved for reconsideration of this court's dismissal of their motion for a declaratory judgment that section 7.006 of the Texas Election Code is unconstitutional. (Docket Entry Nos. 34, 47). The plaintiffs also seek oral argument on their reconsideration motion. The State of Texas has responded, (Docket Entry No. 35), and the plaintiffs have replied, (Docket Entry No. 40, 47).

- The plaintiffs have moved for reconsideration of this court's dismissal of their claim that Fort Bend County violated 42 U.S.C. § 1983 by failing to provide adequate training and supervision to election judges, and that the Incorporation Committee, the Citizens' PAC, and Aldrich violated § 1983 by promoting the incorporation of Weston Lakes. (Docket Entry No. 47). The plaintiffs also contend that this court improperly applied the proper standard for dismissal under Rule 12(b)(6) as articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937 (2009).

- Fort Bend County, the WLPOA and its trustees, the Incorporation Committee, the Citizens' PAC, and Clifton Aldrich have moved for an award of attorneys' fees under 42 U.S.C. § 1988. (Docket Entry Nos. 36, 38, 39). The plaintiffs have responded, opposing the motions and requesting an evidentiary hearing. (Docket Entry Nos. 44, 47). The WLPOA and its trustees, the Citizens' PAC, and Aldrich have replied.

Based on the motions, responses, and replies, the record, and the applicable law, this court denies the motions for reconsideration and oral argument. Final judgment is separately entered. The fee motions will be addressed in a separate memorandum and opinion.

The reasons for these rulings are explained below.

**I.      The Motions for Reconsideration**

The plaintiffs seek reconsideration of this court's denial of their motion for a declaratory judgment that Texas Local Government Code § 7.006 is unconstitutional. The State of Texas opposes this motion.

The plaintiffs also seek reconsideration of this court's dismissal of their claims that Fort Bend County violated 42 U.S.C. § 1983 by failing to provide adequate training and supervision to municipal election judges, and that the Incorporation Committee, the Citizens' PAC, and Aldrich violated § 1983 by pursuing and advocating for the municipal election. The plaintiffs contend that this court misapplied the standard set out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937 (2009) in dismissing the § 1983 claims. Fort Bend County, the Incorporation Committee, the Citizens' PAC, and Aldrich oppose this motion.

### A.     The Legal Standard

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004); *see also St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). Reconsideration motions are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n.10 (5th Cir. 1998). If a motion for reconsideration is filed within ten days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion. *Id.* (internal citations omitted); *see also Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990) ("Under which Rule the motion falls turns on the time at which the motion is served. If the motion is served within ten days of the rendition of judgment, the motion falls under Rule 59(e); if it is served after

that time, it falls under Rule 60(b)."), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994) (en banc). Final judgment has not yet been entered in this case, so Rule 59(e) applies.

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re TransTexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Relief is also appropriate when there has been an intervening change in the controlling law. *Schiller v. Phys. Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Rule 59(e) "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker,* --- U.S. ---, 128 S.Ct 2605, 2617 n.5 (2008) (quoting 11 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2810.1, at 127–28 (2d ed.1995)). "A Rule 59(e) motion is not a 'vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment' but instead has a 'narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Baldwin v. Layton,* 300 F. App'x 321, 323–24 (5th Cir. 2008) (quoting *Templet*, 367 F.3d at 479 (5th Cir. 2004)).

### B. The Challenge to Texas Local Government Code § 7.006

The plaintiffs seek reconsideration of this court's denial of their application for a declaratory judgment that Texas Local Government Code § 7.006 is unconstitutional because it permits only

"qualified voter[s] who reside within the boundaries of the proposed municipality" to vote on incorporation, to the exclusion of nonresidents who own property within the boundaries of the proposed municipality.[2] This court denied the plaintiffs' motion based on the firmly established law that "a government unit may legitimately restrict the right to participate in its political processes to those who reside within its borders" and that such a restriction does not violate the Equal Protection or Due Process Clauses. *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 68–69 (1978). This court noted the voluminous and long-established case law supporting this rule.[3] This court also

---

[2] Under Texas Election Code § 11.002, a "qualified voter" means a person who:
  (1)   is 18 years of age of older
  (2)   is a United States citizen;
  (3)   has not been determined mentally incompetent by a final judgment of a court;
  (4)   has not been finally convicted of a felony or, if so convicted, has:
      (A)   fully discharged the person's sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court; or
      (B)   been pardoned or otherwise released from the resulting disability to vote;
  (5)   is a resident of this state; and
  (6)   is a registered voter.

[3] *See Dunn v. Blumstein*, 405 U.S. 330, 343 (1972) (Municipalities "have the power to require that voters be bona fide residents of the relevant political subdivision."); *Evans v. Cornman*, 398 U.S. 419, 422 (1970); *Kramer v. Union Free School District No. 15*, 395 U.S. 621, 625 (1969); *Carrington v. Rash*, 380 U.S. 89, 91 (1965); 2 MCQUILLIN MUNICIPAL CORPORATIONS § 7.18 (3d ed. 1999) ("An electoral process in which residents of the area to be annexed [or incorporated] are eligible to vote but nonresident property owners are prohibited from voting is constitutionally acceptable."); *Pure Water Comm. of W. Md., Inc. v. Mayor and City Council of Cumberland, Md.*, No. Civ. 01-2611, 2003 WL 22095654, at *4 (D. Md. Sept. 4, 2003) ("A municipal corporation has the power to limit participation in its elections based on residency, even when that municipality engages in actions that affect ineligible voters."); *Foothill-De Anza Community Coll. Dist. v. Emerich*, 158 Cal. App. 4th 11, 27 (Cal. App. 2007) (restricting the vote on a community college bond measure to residents had a rational basis; there was a probability that "local residents had a greater knowledge and interest in local affairs, while nonresident property owners would mainly be interested in lower taxes"); *Neilson v. City of Cal. City*, 133 Cal. App. 4th 1296, 1317 (Cal. App. 2005) (restricting the vote on a flat-rate parcel tax measure to city residents, to the exclusion of nonresident property owners, had a rational basis because the "City could have determined that the residents are most knowledgeable and interested in all aspects of local affairs, on both the revenue and expenditure side of its ledger"); *Massad v.*

noted that the plaintiffs had cited no case supporting their argument that nonresident property owners have a federal constitutional right to vote in a municipal election. On motion for reconsideration, the plaintiffs do not dispute that the case law precedent firmly contradicts their position. They still cite no case to support their argument. Instead, they generally urge this court to reject firmly-established precedent, arguing that "[c]onstitutional interpretations and precedents are not forever carved in memorial" and that the Constitution should be interpreted as providing nonresident property owners a fundamental right to vote in municipal elections. (Docket Entry No. 34 at 4–5). A Rule 59(e) motion is not an appropriate vehicle for raising arguments that could have been raised before the court decides a claim. The plaintiffs do not identify any new argument or any argument that they could not have presented in their initial briefing. New arguments would also be futile. This court cannot simply ignore or reject binding precedent with no basis to distinguish it. As noted in the Memorandum and Order, the proper body to hear the plaintiffs' grievance about the exclusion under § 7.006 of nonresident property owners from municipal incorporation elections is not this court but the legislature. At least ten states—Arizona, Colorado, Connecticut, Delaware, Indiana, Montana, New Mexico, North Dakota, Tennessee, and Wyoming—have passed statutes that give municipalities the option of allowing nonresident property

---

*City of New London*, 652 A.2d 531, 539 (Conn. Supp. 1993) (restricting the vote on a city budget and tax rate ordinance to city residents, to the exclusion of nonresident property owners, was "tailored to legitimate governmental concerns and [wa]s not overridden by the interests of persons owning taxable property in the town who prefer to live elsewhere"); *Givorns v. City of Valley*, 598 So.2d 1338, 1340 (Ala. 1992) (finding a rational basis for restricting a municipal annexation election to residents of the area to be annexed, to the exclusion of nonresident property owners); *Ex parte Progreso Indep. Sch. Dist.*, 650 S.W.2d 158, 163 (Tex. App.–Corpus Christi 1983, writ denied) ("It is well settled that states may require voters to reside in the political subdivision which is holding the election."); Robert C. Ellickson, *Suburban Growth Controls: An Economic and Legal Analysis*, 86 YALE L. J. 385, 404 n.47 (1977) ("It is clear that nonresident landowners have no constitutional right to vote in local general elections.").

owners to participate in municipal elections. Other states are considering similar measures.[4] A court, however, cannot legislate such a result. The motion for reconsideration is denied.

    **C.    The 42 U.S.C. § 1983 Claims**

          **1.    The Claim Against Fort Bend County for Inadequate Training and Supervision of Poll Officials**

The plaintiffs also seek reconsideration of this court's dismissal of their § 1983 claim against Fort Bend County. The plaintiffs contend that this court "did not properly apply the Section 1983 allegations" that Fort Bend County "failed to train the poll judge, Alfred Vahlkamp . . . to comply with the Secretary of State election rules and regulations." (Docket Entry No. 47 at 35). The plaintiffs do not explain how § 1983 was improperly applied. The plaintiffs' amended complaint alleged that Fort Bend County failed "to properly select, hire and train its poll officials to treat all voters[ ] competently, fairly, and equally." (Docket Entry No. 27 ¶ 9(I)). The plaintiffs alleged that the training and instruction of election officials was "casual and informal," taking "only one hour to cover the extensive and complex Election Code[ ] and its rules, regulations, practices and procedures." (*Id.*). The plaintiffs alleged that as a result, poll officials "failed to offer provisional ballots to voters whose name did not appear on the County's voter registry, but who did present adequate identification and proof that they resided in Weston Lakes," and failed to stop improper electioneering near the voting precinct. (*Id.*). These allegations do not support a § 1983 claim and do not provide a basis for reconsideration.

---

    [4] *See* National Conference of State Legislatures, *Nonresident Property Owners and Voting in Local Elections: A Paradigm Shift?* The Canvass (Oct. 2008), *available at* http://www.ncsl.org/print/legismgt/elect/Canvass_Vo15A.pdf (describing state legislative trend toward permitting nonresident property owners to vote in municipal elections).

As this court noted in the Memorandum and Order, courts faced with claims that election irregularities violated due process and equal protection rights "'have uniformly declined to endorse action under § 1983 with respect to garden variety election irregularities.'" 3 JOSEPH G. COOK & JOHN L. SOBIESKI, JR., CIVIL RIGHTS ACTIONS § 8.04[E] (2008) (quoting *Griffin v. Burns*, 570 F.2d 1065, 1076 (1st Cir. 1978)). Section 1983 is implicated only when there is "willful conduct" that "undermines the organic processes by which candidates are elected." *Kozuszek v. Brewer*, 546 F.3d 485, 488 (7th Cir. 2008). The standard is whether the alleged election irregularities "implicat[e] the very integrity of the electoral process," "reach[ing] a point of patent and fundamental unfairness." *Welch v. McKenzie*, 765 F.2d 1311, 1314 (5th Cir. 1985) (internal citations and quotations omitted). "Such a situation must go well beyond the ordinary dispute over the counting and marking of ballots," *id.*, even if the "garden variety" errors "control the outcome of the vote or election." *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998).[5]

The plaintiffs' amended complaint alleged only "garden variety" election irregularities by Fort Bend County. There was no allegation that Fort Bend County intended to interfere with the

---

[5] Examples of "garden variety" irregularities include malfunctioning voting machines and the refusal to hold a manual recount, *Hennings v. Grafton*, 523 F.2d 861, 864–65 (7th Cir.1975); human error resulting in miscounted votes and a delay in the arrival of voting machines, *Gold v. Feinberg*, 101 F.3d 796, 801–02; mishandling procedurally deficient absentee ballots to the detriment of a minority candidate, *Welch*, 765 F.2d at 1317; an allegedly inadequate State response to illegal cross-over voting, *Curry v. Baker*, 802 F.2d 1302, 1316 (11th Cir. 1986); mechanical and human error in counting votes, *Bodine v. Elkhart County Election Bd.*, 788 F.2d 1270, 1272 (7th Cir.1986); technical deficiencies in formatting and printing ballots, *Hendon v. North Carolina State Bd. of Elections*, 710 F.2d 177, 182 (4th Cir. 1983); mistakenly allowing nonparty members to vote in a congressional primary, *Powell*, 436 F.2d 84, 85–86 (2d Cir. 1970); counting some votes that were illegally cast, *Pettengill v. Putnam County R-1 School Dist.*, 472 F.2d 121, 122 (8th Cir. 1973); and arbitrarily rejecting certain ballots, *Johnson v. Hood*, 430 F.2d 610, 612–13 (5th Cir. 1970). Examples of infringements of voting rights that have risen to the level of constitutional equal protection or due process violations include the dilution of votes by reason of malapportioned voting districts or weighted voting systems, *Reynolds v. Sims*, 377 U.S. 533 (1964) and the purposeful or systematic discrimination against voters of a certain class, *Carrington v. Rash*, 380 U.S. 89 (1965), or of a certain political affiliation, *Shakman v. Democratic Org. of Cook County*, 435 F.2d 267 (7th Cir. 1970).

plaintiffs' constitutional voting rights by inadequately training poll workers or inadequately staffing the polls.  Nor did the plaintiffs allege that the irregularities had any effect on the outcome of the election.  Although the plaintiffs conclusorily asserted that Vahlkamp knew of and failed to stop "Vote YES" electioneering that occurred outdoors within 100 feet of the polls during early voting, they did not allege that this affected any voter's decision about whether and how to vote.  The plaintiffs also asserted that Vahlkamp and other poll officials failed to offer provisional ballots to some eligible voters.  But except in the case of plaintiff Theut, whom the plaintiffs suggested was denied a provisional ballot because she was a "young voter" more likely to vote against incorporation, the plaintiffs did not allege that this failure was based on any information as to that voter's position on the incorporation issue or was intended to affect the election outcome.  (Docket Entry No. 17 at 3).

"Elections are, regrettably, not always free from error.  Voting machines malfunction, registrars fail to follow instructions, absentee ballots are improperly administered, poll workers become over-zealous, and defeated candidates are, perhaps understandably, inclined to view these multifarious opportunities for human error in a less than charitable light." *Hutchinson v. Miller*, 797 F.2d 1279, 1286–87 (4th Cir. 1986).  The standard is whether the alleged conduct so undermined the integrity of the electoral process that it rendered the election fundamentally unfair.  *Welch*, 765 F.2d at 1317.  To the extent that the plaintiffs pleaded deficiencies in Fort Bend County's training and supervision of poll officials,  these allegations did not support a constitutional claim under § 1983.

        **2.**       **The Claim Against the Incorporation Committee, Citizens' PAC, and Aldrich**

The plaintiffs also seek reconsideration of this court's dismissal of the claims against the Incorporation Committee, the Citizens' PAC, and Aldrich for operating "under color of state law" to advocate for incorporation. The plaintiffs' amended complaint alleged that the Incorporation Committee, the Citizens' PAC, and Aldrich conspired to "speak and take all actions . . . with the predetermined and prejudged objective of incorporating Weston Lakes as a municipal city," in violation of 42 U.S.C. §§ 1985(3) and 1986, enforceable through § 1983. The plaintiffs contend on reconsideration that this court improperly concluded that these parties were not acting under color of state law by failing to consider the allegations of an "interdependent or symbiotic relationship" between Aldrich in particular and Fort Bend County.

Although the Memorandum and Order did note deficiencies in the allegations in the amended complaint that the Incorporation Committee, Citizens' PAC and Aldrich were acting "under color of state law," this was not the basis for dismissal. Instead, dismissal was required because the plaintiffs had failed to state a cognizable claim under 42 U.S.C. §§ 1985(3) and 1986, which apply only to race-based invidious discrimination. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001); *Wong v. Stripling*, 881 F.3d 200, 202–03 (5th Cir. 1989); *Johnson ex rel. Wilson v. Dowd*, 2008 WL 5212795, at *3 (5th Cir. Dec. 15, 2008) ("In this circuit, we require an allegation of a race-based conspiracy to present a claim under § 1985(3)."). The plaintiffs did not allege in their amended complaint, and do not argue in their motion for reconsideration, that the allegedly biased actions by the Incorporation Committee, Citizens' PAC, and Aldrich to support the incorporation were racially motivated. The plaintiffs' § 1983 claim premised on violations of § 1985 fails as a matter of law. Whether or not the plaintiffs sufficiently alleged that the Incorporation

10

Committee, Citizens' PAC, and Aldrich acted under the color of state law does not change this result.

### 3.     The Application of *Twombly* and *Iqbal*

The plaintiffs also contend that this court did not properly apply the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 129 S.Ct. 1937, in dismissing the § 1983 claims.  In *Twombly*, the Supreme Court held that a complaint fails to comply with Rule 8 if it does not plead "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570. "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir.2007) (quoting *Twombly*, 550 U.S. at 555).  In *Iqbal*, the Court elaborated on the pleading standards discussed in *Twombly*.  The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  129 S.Ct. 1949 (citing *Twombly*, 550 U.S. at 555).  *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

The plaintiffs appear to contend that this court dismissed their amended complaint after concluding that its factual allegations were not plausible.  The plaintiffs argue that they have stated a § 1983 claim that is "plausible on its face" and states "enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim test."  The plaintiffs urge that under

*Twombly* and *Iqbal*, this court "should delay deciding defendant's Rule 12(b)(6) motion until plaintiffs have completed discovery." (Docket Entry No. 47 at 29).

The plaintiffs misconstrue the nature of the dismissal. This court did not dismiss the plaintiffs' § 1983 claims because the factual allegations of election irregularities were implausible. This court dismissed the claims because the factual allegations, taken as true, did not state a cognizable claim under § 1983. *Twombly* and *Iqbal* do not provide a basis for reconsideration.

The plaintiffs' motions for reconsideration are denied.

## II. Conclusion

The motions for reconsideration and oral argument are denied. Final judgment is entered by separate order. A separate memorandum and order on the motions relating to attorneys' fees will be issued.

SIGNED on July 2, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge