**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON  DIVISION**

| | | |
|---|---|---|
| DAVID K. BROYLES, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-02320 |
| | § | |
| STATE OF TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiffs in this case are resident and nonresident property owners in the City of Weston Lakes, Texas.[1]  They sued the State of Texas, Fort Bend County, the Weston Lakes Property Owners' Association ("WLPOA") and its individual trustees, the Weston Lakes Community Incorporation Project Committee (the "Incorporation Committee"), the Citizens' Committee for the Incorporation of Weston Lakes ("Citizens' PAC"), and the chairman of the Incorporation Committee and the Citizens' PAC, Clifton Aldrich.  The suit raised constitutional, federal statutory, and state statutory challenges to, and sought declaratory and injunctive relief from, a municipal-incorporation election held on May 10, 2008.  In that election, Weston Lakes, a private gated community in Fort Bend County, Texas, was converted into a Type B General-Law Municipality called the City of Weston Lakes.

---

[1]  The plaintiffs are David K. Broyles, Shellie Galik Broyles, Frederick B. Howden IV, Eric Jones, Stacey Jones, Brian E. Koons, James R. McKean, Jerry Mosbacher, James E. Ritter, Jeannell M. Ritter, Cheryl Stalinsky, Lisa H. Theut, Michael S. Cooper, Laura G. Gonzales, Willie Irvin, William Patrick McArthur, Jessie Fay Oliver, Bernice F. Gilmore, Charles D. McWilliams, Brian C. Kimmel, Martin G. Parr, and James A. Winne, III.

On March 31, 2009, this court dismissed the plaintiffs' constitutional and federal statutory claims with prejudice, denying declaratory and injunctive relief. The state statutory claims were dismissed without prejudice to refiling in state court. On July 2, 2009, this court denied the plaintiffs' motion for reconsideration. Fort Bend County, the WLPOA and its trustees, the Incorporation Committee, the Citizens' PAC, and Aldrich then moved for an award of attorneys' fees under 42 U.S.C. § 1988. (Docket Entry Nos. 36, 38, 39). The plaintiffs have responded. (Docket Entry Nos. 44, 47). The WLPOA, its trustees, and the Incorporation Committee have replied. (Docket Entry No. 46).

Based on the motions, responses, and replies, the record, and the applicable law, this court denies the plaintiffs' request for an evidentiary hearing and awards attorneys' fees in the amount of $6,645 to Fort Bend County and $5,230 to the WLPOA, its individual trustees, and the Incorporation Committee, for a total of $11,875. No fees are awarded to the Citizens' PAC and Aldrich.

The reasons for these rulings are explained below.

## I. Background

The plaintiffs filed their original complaint on July 25, 2008. (Docket Entry No. 1). The first count sought a declaratory judgment that Texas Local Government Code § 7.006, which permits only residents to vote in a municipal election, and prevents nonresident property owners from voting, was unconstitutional. The second count contended that the State of Texas and Fort Bend County violated the National Voter Registration Act ("NVRA"), 42 U.S.C. § 1973gg *et seq.*, and the Help America Vote Act ("HAVA"), 42 U.S.C. § 15302 *et seq.* The third count asserted claims under 42 U.S.C. § 1983 against Fort Bend County and its officers for alleged procedural irregularities in the municipal incorporation vote. The § 1983 claims were based on alleged

violations of the Due Process Clause of the United States Constitution; federal statutes (42 U.S.C. §§ 1971(a)(2)(A),(b), 1985(3) and 1986); and Texas municipal incorporation and election laws. The fifth count of the complaint asserted claims under 42 U.S.C. §§ 1983, 1985(3) and 1986 against the WLPOA and its trustees, the Incorporation Committee, the Citizens' PAC, and Aldrich, based on allegations that these parties conspired to act "under color of State law" to "take all actions and/or non-actions with the predetermined and prejudged objective of incorporating Weston Lakes as a municipal city." (*Id.* ¶ 87–88). The fourth count asserted a state-law shareholders' derivative action on behalf of the WLPOA, alleging that the WLPOA trustees abused their position by "creat[ing] and fund[ing] the Incorporation Committee with the predetermined and prejudged conclusion and objective that Weston Lakes should become a municipality." (*Id.* ¶ 75).

On the same day they filed their complaint, the plaintiffs moved for a temporary restraining order against implementing the results of the May 10, 2008 election. The plaintiffs argued that they were likely to prevail on their constitutional challenge to § 7.006 and on their constitutional and statutory challenges to the way the May 10, 2008 election was conducted. (Docket Entry Nos. 3, 8). The Citizens' PAC responded. (Docket Entry No. 4). This court held a hearing on the temporary restraining order application on August 4, 2008. (Docket Entry No. 10). Immediately before the hearing, the plaintiffs filed a motion seeking a declaratory judgment that § 7.006 was unconstitutional. (Docket Entry No. 7). At the end of the hearing, this court denied the plaintiffs' motion for temporary restraining order. (Docket Entry No. 10).

Immediately after the hearing, on August 5, 2008, the plaintiffs filed an amended motion for declaratory judgment and an amended application for a preliminary and permanent injunction against implementing the election results. (Docket Entry Nos. 5, 6). Fort Bend County and the

3

Citizens' PAC responded.  (Docket Entry Nos. 12, 14, 20).  The State of Texas filed a motion to dismiss the NVRA claim.  (Docket Entry No. 21).  The plaintiffs replied to these responses and responded in opposition to the motion to dismiss.  (Docket Entry Nos. 17, 18, 23).  In November 2008, the Citizens' PAC and Aldrich filed a motion to dismiss the § 1983 claims against them based on the fact that they are private citizens, not state actors.  The motion also addressed possible claims against Aldrich in his individual capacity.  (Docket Entry No. 22).  The plaintiffs responded that the complaint stated a claim against the Citizens' PAC, but did not address whether they intended to sue Aldrich in his individual capacity.  (Docket Entry No. 23, 24).

On January 12, 2009, the plaintiffs moved for leave to file a first amended complaint. (Docket Entry No. 27).  Fort Bend County and the Citizens' PAC and Aldrich opposed the motion. (Docket Entry Nos. 28, 29).  The plaintiffs moved to "strike" and to "dismiss" this opposition. (Docket Entry Nos. 30, 31).

On March 31, 2009, this court entered a memorandum and order on the outstanding motions. Concluding that the federal constitutional and statutory claims were without merit as a matter of law, and that the proposed amended federal constitutional and statutory claims were futile, this court denied leave to amend and dismissed these claims with prejudice.  This court did not address the merits of the state-law claims but instead dismissed those without prejudice to their assertion in state court.  (Docket Entry No. 32).

In the memorandum and order, this court concluded that the § 1983 claims against Fort Bend County failed because they alleged only "garden variety election irregularities," which the case law makes clear are not actionable under § 1983.  *See* 3 JOSEPH G. COOK & JOHN L. SOBIESKI, JR., CIVIL RIGHTS ACTIONS § 8.04[E] (2008) (courts faced with claims that election irregularities violated due

4

process and equal protection rights "have uniformly declined to endorse action under § 1983 with respect to garden variety election irregularities."). The plaintiffs alleged that Fort Bend County failed "to properly select, hire and train its poll officials to treat all voters[ ] competently, fairly, and equally," that the training and instruction of poll officials was "casual and informal," taking "only one hour to cover the extensive and complex Election Code[ ] and its rules, regulations, practices and procedures," and that as a result, poll officials "failed to offer provisional ballots" to some voters who were entitled to them and failed to stop improper electioneering near the voting precinct. (Docket Entry No. 27 ¶ 9(I)). Section 1983 is implicated only if there is "willful conduct" that "undermines the organic processes by which candidates are elected." *Kozuszek v. Brewer*, 546 F.3d 485, 488 (7th Cir. 2008). The standard is whether the alleged election irregularities "implicat[e] the very integrity of the electoral process," "reaching a point of patent and fundamental unfairness" that "go[es] well beyond the ordinary dispute over the counting and marking of ballots," *Welch v. McKenzie*, 765 F.2d 1311, 1314 (5th Cir. 1985), even if those errors "control the outcome of the vote or election," *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998). The plaintiffs did not allege that Fort Bend County intended to interfere with the plaintiffs' constitutional voting rights or that any of the alleged irregularities had any effect on any individual's decision about whether and how to vote, let alone on the outcome of the election. With the exception of one voter, there was no allegation that the poll officials who allegedly improperly denied provisional ballots had any information as to any individual voter's position or denied a provisional ballot in order to affect the outcome. This court concluded that even taking the plaintiffs' allegations as true, the alleged irregularities did not undermine the integrity of the electoral process so as to make it fundamentally unfair. As a result, the plaintiffs failed to state a claim under § 1983 against Fort Bend County.

This court also concluded that the § 1983 claims against the WLPOA and its trustees, the Incorporation Committee, the Citizens' PAC, and Aldrich, premised on violations of §§ 1985(3) and 1986, failed as a matter of law because §§ 1985(3) and 1986 apply only to race-based discrimination, which was not alleged.  *Horaist v. Doctor's Hosp. v. Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001); *Wong v. Stripling*, 881 F.2d 200, 202–03 (5th Cir. 1989); *Johnson ex rel. Wilson v. Dowd*, 305 F. App'x 221, 224 (5th Cir. 2008) (unpublished) ("In this circuit, we require an allegation of a race-based conspiracy to present a claim under § 1985(3).").  Because the plaintiffs did not allege in their original or amended complaints that the alleged actions by the WLPOA and trustees, the Incorporation Committee, the Citizens' PAC, and Aldrich were racially motivated, the § 1983 claims against these parties under §§ 1985(3) and 1986 were dismissed.

In April 2009, the plaintiffs sought reconsideration.  (Docket Entry Nos. 33, 34).  The State of Texas responded,  (Docket Entry No. 35), and the plaintiffs replied, (Docket Entry No. 40).  This court denied the motion for reconsideration in a memorandum and order issued on July 2, 2009.  (Docket Entry No. 49).

Fort Bend County, the WLPOA and trustees and the Incorporation Committee, and the Citizens' PAC and Aldrich moved for attorneys' fees under 42 U.S.C. § 1988.  (Docket Entry Nos. 36, 38, 39).  The plaintiffs responded, (Docket Entry No. 44), and the WLPOA and trustees and the Incorporation Committee replied, (Docket Entry No. 46).  The plaintiffs filed a surreply, asking for an evidentiary hearing.  (Docket Entry No. 47).

## II.    The Legal Standard

The parties seeking fees rely on 42 U.S.C. § 1988(b), which  provides, in relevant part, that "the court, in its discretion, may allow the prevailing party, other than the United States, a

reasonable attorney's fee as part of the costs" in an action under 42 U.S.C. § 1983.  The § 1988 fee provision "was included to make it easier for a plaintiff of limited means to bring a meritorious suit." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978).  The provision also applied to prevailing defendants, in order "to deter the bringing of lawsuits without foundation," "to discourage frivolous suits," and "to diminish the likelihood of unjustified suits being brought."  *Id*.  These competing considerations have led courts to conclude that "the standard for awarding attorneys' fees differs if a defendant rather than a plaintiff prevails." *White v. Southpark Indep. Sch. Dist.*, 693 F.2d 1163, 1169 (5th Cir. 1982).  A prevailing defendant cannot receive attorneys' fees under § 1988 "unless a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422; *see also No Barriers, Inc v. Brinker Chili's Tex., Inc.*, 262 F.3d 498, 498 (5th Cir. 2001).

In applying *Christiansburg*, the Fifth Circuit has cited three factors as important: "(1) whether plaintiff established a prima facie case; (2) whether the defendant offered to settle, and (3) whether the district court dismissed the case or held a full-blown trial." *United States v. Miss.*, 921 F.2d 604, 609 (5th Cir. 1991).  A finding of bad faith is not a prerequisite to awarding fees to a prevailing defendant, but "if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorneys' fees incurred by the defense." *Christiansburg*, 434 U.S. at 422.  If the plaintiff's claims are plainly barred under the governing law or lack a "reasonable basis," a fee award to the defendant is appropriate.  *DeLeon v. City of Haltom City*, 113 F. App'x 577, 578 (5th Cir. 2004) (unpublished).  A party's financial condition is not properly considered in determining whether to award fees, although inability to pay

should be considered when determining the amount to be awarded. *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 238 (5th Cir. 1990).

If the court decides to award fees under § 1988, a two-step process applies to determine the amount. First, the court must calculate the lodestar. *Thompson v. Connick*, 553 F.3d 836, 867 (5th Cir. 2008); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The lodestar is determined by "'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Thompson*, 553 F.3d at 867 (quoting *Migis*, 135 F.3d at 1047). Second, the court decides whether the lodestar should be adjusted upward or downward based on the circumstances, using the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See Thompson*, 553 F.3d at 867. The twelve *Johnson* factors are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Johnson*, 488 F.2d at 717–19).

## III. Analysis

### A. A Fee Award is Appropriate

The defendants argue that the *Christiansburg* factors, as applied in the Fifth Circuit, favor a fee award. The defendants point out that this court concluded that the plaintiffs did not state a prima facie case as to their § 1983 claims; there is no evidence that any of the defendants believed

8

that the case had sufficient merit to offer a settlement; and this court dismissed the case at the Rule 12(b)(6) stage, before any discovery. The plaintiffs counter that although they did not prevail, their claims were neither frivolous nor baseless.

The record does not support the plaintiffs' argument. A suit is "frivolous" if it is "so lacking in arguable merit as to be groundless or without foundation." *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999) (internal quotations and citation omitted). The plaintiffs' § 1983 claims against the state actors were frivolous. Even taking all of the allegations in the complaint as true, these allegations fell far short of what is necessary to state a claim under § 1983 against Fort Bend County, the WLPOA and its trustees, the Incorporation Committee, the Citizens' PAC, and Aldrich. The election irregularities alleged against Fort Bend County were garden-variety, at best. There was no allegation that the defendants engaged in a deliberate or systematic effort to undermine the integrity of the election by inadequately training or supervising poll officials, or that any of the alleged irregularities in fact undermined the integrity of the election. There was no allegation that the WLPOA and its trustees, the Incorporation Committee, the Citizens' PAC, or Aldrich engaged in race-based invidious discrimination. Under the clear weight of well-established authority, the plaintiffs failed to state a prima facie case. There is no evidence that the defendants believed the case to have sufficient merit to offer a settlement, and this court dismissed these claims before discovery occurred.

The nature of these claims is similar to those used as the basis for awarding fees to prevailing defendants in other cases. *See DeLeon*, 113 F. App'x at 578 (upholding a fee award to the defendant judge because the judge's "judicial immunity was clear on the facts alleged" and the plaintiff "fail[ed] to set forth a reasonable basis for an extension or modification of immunity law"); *Myers*

*v. City of West Monroe*, 211 F.3d 289, 293 (5th Cir. 2000) (upholding a grant of attorneys' fees in an illegal search-and-seizure case under § 1983 when the plaintiff offered no evidence that the defendant violated the plaintiff's rights and the claims were dismissed during trial); *Morse v. North Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (upholding an award of attorneys' fees against a teacher's aide who sued a Head Start parents' council under § 1983 because the claim was "completely barred by the terms of the statute"); *Strain v. Kaufman County Dist. Attorney's Office*, 23 F. Supp. 2d 698, 700 (N.D. Tex. 1998) (awarding fees because the plaintiffs failed to show any basis for their § 1983 claims that "they were victimized by a wide-ranging conspiracy consisting of state and county agencies and various state actors"); *Butler v. Rapides Foundation*, 365 F. Supp. 2d 787, 793–94 (W.D. La. 2005) (concluding that a fee award was appropriate because the plaintiff failed to state a prima face case for his § 1983 claim).  Like the plaintiffs in these cases, the plaintiffs in the present case failed to present a basis for their claims that the conduct of the election at issue violated §§ 1938, 1985(3), or 1986.

The fact that it was not necessary to rule on the state-law claims does not defeat a finding that the § 1983 and related claims were frivolous.  *See Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1064 (9th Cir. 2006) (a fee award was appropriate, even though the frivolous constitutional claims were related to nonfrivolous claims of statutory violations, because the constitutional and federal statutory claims, although they arose from the same basic set of facts, were distinct and could easily be evaluated separately).

The plaintiffs argue that their claims were not frivolous because all the motions to dismiss "accept[ed] as true allegations of fact in Plaintiffs' pleadings."  (Docket Entry No. 44 at 6). This argument confuses the test for whether a complaint states a claim on which relief can be granted

with the test for whether claims are frivolous.  A court must analyze a complaint challenged under Rule 12(b)(6) by taking as true the material factual allegations and construing them in the light most favorable to the nonmoving party, as long as they are not  merely "labels and conclusions" or conclusory legal allegations cast in the form of factual allegations that cannot reasonably be drawn from the facts alleged.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, --- U.S. ---, 129 S.Ct. 1937, 1940 (2009); *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 371–72 (5th Cir. 2008).  Taking the factual allegations as true is required under Rule 12(b)(6).  This analytical approach to deciding a motion to dismiss is separate from determining whether allegations are frivolous under *Christiansburg*.

The plaintiffs also argue that the defendants cannot now argue frivolousness because in their motions to dismiss, they did not specifically argue that the plaintiffs' claims were "frivolous, unreasonable, or groundless."  (Docket Entry No. 44 at 5).  The plaintiffs cite no authority for the proposition that a defendant must specifically raise frivolousness in a motion to dismiss in order to seek attorneys' fees under § 1988 if the motion is granted.  The defendants moved to dismiss on the basis that the complaint and amended complaint failed to state a claim upon which relief could be granted.  This court granted the motions.  The defendants are not foreclosed from seeking fees.

The plaintiffs also argue that this court should not make a "post hoc" determination that their claims were frivolous.  If the plaintiffs are arguing that frivolousness requires more than a lack of success, they are correct.  If the plaintiffs are arguing that this court should view the complaint and amended complaints based on the information available when they were filed, they are also correct.  But neither argument supports a finding that the plaintiffs' claims were nonfrivolous. The plaintiffs' allegations clearly failed to state a claim under well-established law.  This is not a case in which the

deficiencies of the plaintiffs' claims became apparent only after the factual record was developed through discovery or trial.

The plaintiffs contend that they have located "eleven Fifth Circuit cases ruling that the complaints [we]re not frivolous." (Docket Entry No. 47 at 12 n. 36).[2]  None of these cases provides a basis for denying attorneys' fees in this case.  In most of the cases cited, the inadequacy of the plaintiffs' claims did not become apparent until after discovery or trial.  In other cases, the Fifth Circuit simply concluded that the district court did not abuse its discretion in refusing to award attorneys' fees.  A brief discussion of each case makes clear that they do not apply here.

- In *Mylette v. Jeane*, 910 F.2d 296, 300 (5th Cir. 1990), the appellate court reversed an award of attorneys' fees to the defendants.  The case had proceeded through discovery to trial, which ended in a directed verdict for one defendant and a jury verdict for the other defendants.  The Fifth Circuit noted that some of the discovery supported the plaintiff's claims, and that it "c[ould] not be said that" the plaintiff's claim "was frivolous, unreasonable, or without foundation."  *Id.*

- In *Coats v. Pierre*, 890 F.2d 728, 733–34 (5th Cir. 1989), the Fifth Circuit reversed the fee award to the prevailing defendant.  That case had proceeded to trial on the merits.  The district court's only basis for concluding that the plaintiff's claims were frivolous was that the plaintiff had not elicited testimony establishing a deprivation of her rights from her witnesses, but it was the district court's evidentiary rulings that prevented her from doing so.

---

[2]  The plaintiffs in fact cite twelve cases.

- In *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1140–41 (5th Cir. 1983), the appellate court reversed an award of attorneys' fees to the defendant because the plaintiff had stated a prima facie case under § 1983, the case went to trial on several claims, one of which was a close legal question that had "scant Fifth Circuit precedent" and another of which the appellate court remanded after concluding that it was improperly decided in the defendants' favor.  The court concluded that  it "c[ould] not be reasonably said that" the plaintiff's claims were "without arguable merit."

- In *White v. South Park Independent School District*, 693 F.2d 1163, 1170 (5th Cir. 1982), the appellate court reversed a fee award to the prevailing defendant in a First Amendment case arising out of a job termination.  There were disputed fact issues material to determining whether the plaintiff was an at-will employee and whether the termination violated his First Amendment rights, which the district court resolved after review of the full record.  The district court's final judgment contained no findings of facts or conclusions of law that supported a conclusion that the plaintiff's suit was frivolous.

- In *Stenseth v. Greater Fort Worth and Tarrant County Community Action Agency*, 673 F.2d 842, 849 (5th Cir. 1982), the Fifth Circuit reversed attorneys' fees awarded to the defendants, noting that the defendants only prevailed after a bench trial on the merits and that at the outset of the trial, the plaintiff's claims "carried at least some measure of possible justification for going to trial."

- In *Simotas v. Kelsey-Seybold*, 211 F. App'x 273, 276 (5th Cir. Dec. 6, 2006) (unpublished), the appellate court declined to grant attorneys' fees to the defendant

13

after the plaintiff's unsuccessful appeal, pointing out that "a portion of the appeal sprang from the district court's error in calculating the applicable time limitation regarding the motion for reconsideration." The appeal was therefore "not entirely frivolous."

• In *Jones v. Texas Tech University*, 656 F.2d 1137, 1145 (5th Cir. 1981), the Fifth Circuit reversed a district court's grant of attorneys' fees to the defendants because a threshold legal issue, whether res judicata barred the plaintiff's suit, was not clear-cut and was not resolved before the parties began a trial on the merits of the underlying claim.

• In *Little v. Southern Electric*, 595 F.2d 998, 1005 (5th Cir. 1979), the appellate court concluded that the fact that the plaintiff's complaint was time-barred did not make it frivolous or groundless so as to justify a fee award. The court found no factual basis in the record to conclude that the plaintiff knew that the time for filing suit had lapsed.

• In *Clifton v. City of Denton*, No. 07-41263, 2009 WL 348754, at *2 (5th Cir. Feb. 12, 2009), the court held in a per curiam opinion that the district court did not abuse its discretion in refusing to award attorneys' fees to the prevailing defendant after it disposed of the suit on pretrial motions. Part of the case was dismissed on the basis of qualified immunity; another part was dismissed on summary judgment on the basis that the plaintiff "failed to show any violation of a constitutional right." The district court concluded that there was "nothing in the record to indicate [that the suit] was groundless or filed frivolously." *Id.* at *1.

14

- In *Esmark Apparel, Inc. v. James*, 10 F.3d 1156, 1163–64 (5th Cir. 1994), the Fifth Circuit held that the district court did not abuse its discretion in refusing to award attorneys' fees based on the plaintiff's conduct in discovery. This case, like *Clifton,* describes circumstances in which a district court has discretion to deny a fee award, not circumstances in which it would be error to award fees.

- In *Marable v. H. Walker & Associates*, 644 F.2d 390, 397 (5th Cir. 1981), the appellate court reversed a verdict for the defendants, concluding that the district court had clearly erred and that the plaintiffs had proven their claim under the Fair Housing Act and the Civil Rights Act. The court remanded for consideration of damages, attorney's fees, and injunctive relief.

- In *Von Clark v. Butler*, 916 F.2d 255 (5th Cir. 1990), the appellate court upheld a fee award to the prevailing plaintiff and affirmed the district court's decision to reduce the lodestar to account for hours not spent prosecuting the § 1983 claim.

As discussed below, reductions to the lodestar are also appropriate in this case. But neither *Von Clark* nor the other cases listed above supports the plaintiffs' argument that no attorneys' fees should be awarded in this case.

Finally, the plaintiffs argue that a fee award is not appropriate because their counsel "has certified, to his best knowledge, information, and belief, formed after scores of thorough personal and telephone interviews . . . and after methodical legal research for more than two months, utilizing specialized treatises," the validity of the claims. (Docket Entry No. 47 at 4). This appears to be an argument that plaintiffs' counsel proceeded in good faith. But bad faith is not "a necessary prerequisite to a fee award." The absence in the record for a reasonable basis for the § 1983 and

related claims, even if they were made in good faith, supports awarding fees to the defendants. *Christiansburg*, 434 U.S. at 421.

The plaintiffs' federal-law claims were frivolous under *Christiansburg*. An award of attorneys' fees to the prevailing defendants is appropriate.

**B.     Calculating the Lodestar**

**1.     The Hourly Rate**

The first step in computing the lodestar is determining a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The party seeking fees bears the burden of establishing the market rate. *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

*a.     Fort Bend County*

Fort Bend County seeks $14,880.00 in legal fees for 99.2 hours of legal work. David Morse, an assistant county attorney with the Fort Bend County Attorney's Office, was the attorney-in-charge for the county in this matter. Morse has submitted an affidavit stating that he has been licensed to practice law in Texas since 1978, that he is familiar with the fees customarily charged by attorneys in Fort Bend County and Harris County, Texas, and that in his opinion, a fee of $150 per hour is reasonable. (Docket Entry No. 39, Ex. 1). Morse states that he was also assisted by associates and staff, but Fort Bend County is not seeking fees for the work performed by these persons.

The plaintiffs do not challenge the reasonableness of Morse's hourly rate. The State Bar of Texas published an "Hourly Rates in 2005 Report," the most recent such report. It shows that the median hourly rate for attorneys with over 25 years of experience was $240 per hour.[1] Another federal district court in Texas concluded in 1998 that $150 was a reasonable hourly rate for a county attorney representing a defendant county that prevailed and sought fees under § 1988. *See Strain v. Kaufman County Dist. Atty's Office*, 23 F. Supp. 2d 698, 703–04 (N.D. Tex. 1998). The hourly rate submitted by Fort Bend County is consistent with prevailing market rates and is reasonable.

> b. *The WLPOA and Trustees and the Incorporation Committee*

The WLPOA and its trustees and the Incorporation Committee seek $22,417.52 in legal fees for 125.5 hours of work. They were represented by the firm of Hays McConn Rice & Pickering. One Hays McConn shareholder, James J. McConn, Jr., has submitted an affidavit. McConn states that he has been licensed to practice law in Texas since 1973 and is board certified in civil trial law by the Texas Board of Legal Specialization. McConn states that $175 per hour for his time is consistent with fees "customarily charged in this area for the same or similar services for an attorney with similar experience, reputation, and ability, considering the amount in controversy, the time limitations imposed, the result obtained, the time and labor required, the novelty and difficulty of the questions involved, and the skill to perform the legal services properly." (Docket Entry No. 38, Ex. B). McConn's affidavit also identifies one other shareholder and two associates who worked on the case. McConn states that $175 per hour is also a reasonable, necessary, and customary fee

---

[1] *See* Texas State Bar, Dep't of Research & Analysis, *Hourly Rates in 2005 Report* at 5 (Sept. 21, 2006), *available at*:
 http://www.texasbar.com/Template.cfm?Section=Research_and_Analysis&Template=/ContentManagement/ContentDisplay.cfm&ContentID=15888 (last visited July 22, 2009).

for the other shareholder, who has been licensed to practice law since 2001, and for the associates, MMG and RMG, who have been licensed to practice law since 2003 and 2006, respectively. (*Id.*). The billing records attached to McConn's affidavit include billing entries for two additional individuals, one billed at $175 per hour and one at $70 per hour. The fee application does not provide information about these individuals.

The plaintiffs challenge the fact that these defendants are seeking fees of $175 per hour for each attorney who worked on this matter, regardless of their experience, which ranges from three to thirty-six years. The WLPOA and trustees and the Incorporation Committee did not address this argument in their reply brief. Clearly a $175 hourly rate is reasonable for the two shareholders, although from the billing records it appears that McConn was the only shareholder who worked on the case. According to the Texas State Bar's "Hourly Rates in 2005" Report, a $175 hourly rate was within the 25th percentile of hourly rates charged by attorneys in Texas with over 25 years' experience. It is appropriate to set the hourly rates for the other Hays McConn attorneys based on the 25th percentile of fees for attorneys with their experience. The hourly rate for the two associates is set at $150, the 25th percentile rate for attorneys with 3–6 years' experience. The hours for the two individuals appearing in the billing records about whom no information is provided are not included in the lodestar.

> c.    *The Citizens' PAC and Aldrich*

The Citizens' PAC and Aldrich seek $14,170.00 for 63.7 hours of work. They were represented by four individuals from the law firm of Olson & Olson, L.L.P. Attorney Scott Bounds has submitted an affidavit stating that his firm's hourly rates are in accordance with the rates charged by those with similar experience. Bounds does not specify what position he holds at Olson & Olson,

how long he has practiced, or what his relevant experience is.  (Docket Entry No. 36, Ex. 4).  The billing records attached to the affidavit show that the Citizens' PAC and Aldrich are seeking fees of $240 per hour for Bounds's time.  The billing records also contain entries for three other individuals.  The time for two of these individuals is billed at $250 per hour and one is billed at $95 per hour.  The record contains no information about the position, experience, or credentials of these individuals.

The Citizens' PAC and Aldrich have not met their burden of providing this court with information that would enable it to assess the reasonableness of their attorneys' hourly rates.  "[M]ere testimony that a given fee is reasonable is not satisfactory evidence of a market rate." *Abbott v. Graves*, No. 07-0454, 2009 WL 928629, at *2 (E.D. La. Mar. 31, 2009) (citing *Hensley*, 461 U.S. at 439 n.15); *cf. Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) (denying attorneys' fees when "the record [w]as virtually devoid of any information helpful to a determination" as to the reasonableness of the hours).  Without a description of the positions and experience of the legal personnel who worked on the case, this court has no basis to determine the reasonableness of the hourly rate.  The fee application filed by the Citizens' PAC and Aldrich is denied.

### 3.    The Number of Hours Reasonably Expended

The second step in the lodestar analysis is to determine the number of hours reasonably expended on the litigation.  A fee application should include "time records that specify, for each attorney, the date, the hours expended, and the nature of the work done."  *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).  "Hours that are excessive, redundant, or otherwise unnecessary are to be excluded, and in dealing with such surplusage, the court has discretion simply to deduct

a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Hensley,* 461 U.S. at 433–34 (internal quotations and citations omitted).  The court may also exclude hours that are not properly documented. *See id.*

> a.    *Fort Bend County*

Morse's affidavit for Fort Bend County contains entries from July 28, 2008 to April 19, 2009.  The entries show that Morse spent 99.2 hours defending Fort Bend County in this case.  A summary of the general categories of time claimed is set forth below:

| Task | Timekeeper | Hours | Rate | Amount |
|---|---|---|---|---|
| Background research | Morse | 13.8 | $150 | $2,070.00 |
| Response to Motion for Preliminary Injunction | Morse | 32.7 | $150 | $4,905.00 |
| Memoranda and Conferences with Unidentified Subject | Morse | 4.9 | $150 | $735.00 |
| Answer | Morse | 15.8 | $150 | $2,370.00 |
| Class Certification Research | Morse | 0.4 | $150 | $60.00 |
| Response to Motion for Declaratory Judgment | Morse | 2.6 | $150 | $390.00 |
| Work with Department of Justice re: Preclearance Issue | Morse | 1.7 | $150 | $255.00 |
| Printing, reviewing, and filing case documents | Morse | 16.5 | $150 | $2,475.00 |
| Opposition to Plaintiffs' Motion for Leave to Amend | Morse | 7.1 | $150 | $1,065.00 |
| Unfiled Sanctions Motion | Morse | 0.2 | $150 | $30.00 |
| Attorneys' Fee Application | Morse | 3.5 | $150 | $525.00 |
| Total | Morse | 99.2 | $150 | $14,880.00 |

The plaintiffs complain that many of Morse's billed hours are for printing, reviewing, and filing documents.  (Docket Entry No. 44 at 8).  Morse's review of the documents was substantive legal work, necessary for properly assessing and pursuing the case.  But the billing entries do not distinguish between time spent in substantive review and time spent on clerical tasks such as printing and filing.  Attorneys' fees may not be awarded for clerical work.  *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001); *Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982).  A reduction for the clerical tasks of printing and filing is appropriate.   The 16.5 hours that Morse billed to printing, reviewing, and filing documents is reduced by 5.5 hours (or approximately one-third), to 11 hours.

The plaintiffs also object to numerous entries in Morse's billing records that refer to conversations with other attorneys or reviews of memoranda but do not specify the subject.  (Docket Entry No. 44 at 8).  The records show 4.9 hours of such billing entries.  These are too vague to be included in the lodestar.  *See Kellstom*, 50 F.3d at 326 ("The district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review.").  These 4.9 hours are disallowed.

Morse spent 0.2 hours on a sanctions motion that was never filed.  This time is not properly included in the lodestar.  Fort Bend County's fee application is accordingly reduced by 0.2 hours.

The plaintiffs also complain that many of Morse's billing entries describe more than one type of task and do not indicate how much time was spent on each task.  "[O]ur case law has not precisely defined the appropriate standard" for specificity in billing records "if in fact it is susceptible to being thus defined"; "practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in detail the professional services rendered for each hour or fraction of

an hour." *Kellstrom,* 50 F.3d at 326–27; *see also Keeton v. Wal-Mart Stores, Inc.*, 21 F. Supp. 2d 653, 659 (E.D. Tex. 1998) ("Although the fee-seeking party bears the burden of submitting evidence supporting the hours worked, absolute specificity is not required.  The record need only be sufficiently clear to allow the trial court to make a determination of the reasonableness of expenses." (citing *Kellstrom*, 50 F.3d at 326)).  In this court's review of the billing records, the entries that included vague references to the work performed were deducted from the lodestar, even if the entries also showed other, more specifically described, work.  This conservative approach addresses the plaintiffs' concerns.  *See Kellstrom*, 50 F.3d 326–27.

The plaintiffs also complain that the County's billing records may be "fabricated" because "[t]here is no necessity to maintain billing records for the citizens who do not receive any bills," and argue that Morse's records therefore may not have been "contemporaneously recorded."  (Docket Entry No. 44 at 11).   But contemporaneous records are not required.  "Failing to provide contemporaneous billing statements does not preclude an award of fees per se, as long as the evidence produced is adequate to determine reasonable hours." *Kellstrom*, 50 F.3d at 323–35 (citing *Heasley v. Commissioner*, 967 F.2d 116, 123 (5th Cir. 1992)).  There is no basis to find that the records are "fabricated."  Morse's records provide an adequate description of the tasks performed and hours spent, and the amount of time claimed, adjusted as described, is reasonable.  The possibility that Morse's billing records were not contemporaneously recorded is not a basis for denying attorneys' fees.

The number of hours reasonably expended by Morse for purposes of calculating the lodestar is 88.6.  This reflects a 10.6 hour reduction to the 99.2 hours claimed.  Multiplying by $150, the lodestar for Fort Bend County is $13,290.

b.    *The WLPOA and Trustees and the Incorporation Committee*

McConn's affidavit attaches as an exhibit billing entries dating from May 16, 2008 to February 23, 2009.  The entries show 125.5 hours of work.  The total includes hours billed by the two individuals about whom WLPOA and its trustees and the Incorporation Committee provided no information.   Because this court lacks information about their positions, experience, and credentials, and cannot assess the reasonableness of their hourly rates or the number of hours spent, the time billed for these individuals is not included in the lodestar.  *Cf. Swiney v. Texas*, No. 06-0941, 2008 WL 2713756, at *6 (W.D. Tex. July 3, 2008) (recommending eliminating hours billed by unidentified attorney from the lodestar calculation).  Deducting the time for these individuals reduces the total number of hours to 95.8.

A summary of the general categories of time claimed is set forth below:

| Task | Timekeeper | Hours | Rate | Amount |
|---|---|---|---|---|
| Pre-Suit Demand Response | McConn | 6.8 | $175 | $1,190.00 |
|  | RMG | 3.1 | $150 | $465.00 |
| Activities Relating to Insurer | McConn | 7.1 | $175 | $1,242.50 |
|  | MMG | 2.6 | $150 | $390.00 |
| Background Research | McConn | 1.6 | $175 | $280.00 |
| Preparation for Hearing on Motion for Temporary Restraining Order | McConn | 19.2 | $175 | $3,360.00 |
|  | RMG | 10.8 | $150 | $1,620.00 |
| Reviewing Case Filings and Documents, Considering Strategy, and Conferring with Counsel for Other Defendants | McConn | 20.9 | $175 | $3,657.50 |
|  | MMG | 0.2 | $150 | $30.00 |
|  | RMG | 3.0 | $150 | $450.00 |
| Memoranda and Conferences With Unidentified Subject | McConn | 0.5 | $175 | $87.50 |
| Answer | RMG | 3.3 | $150 | $495.00 |

| Initial Disclosures | MMG | 0.2 | $150 | $30.00 |
|---|---|---|---|---|
| File Notice of Appearance for MMG | MMG | 0.4 | $150 | $60.00 |
| Activities Relating to Plaintiffs' Filing of Amended Complaint | McConn | 1.8 | $175 | $315.00 |
| | MMG | 1.9 | $150 | $285.00 |
| Draft Portions of Motion to Dismiss | MMG | 12.4 | $150 | $1,860.00 |
| Totals | McConn | 57.9 | $175 | $10,132.50 |
| | MMG | 17.7 | $150 | $2,655.00 |
| | RMG | 20.2 | $150 | $3,030.00 |
| Grand Total | | 95.8 | | $15,817.50 |

The plaintiffs challenge the 9.7 hours that McConn and an associate spent seeking coverage from the defendants' insurer. This time includes corresponding with the insurer about the deductible, providing status updates, and drafting a "litigation plan and budget." The case law supports the plaintiffs' position that such time is not properly included in a fee award. *See, e.g., Millon v. Johnston*, No. Civ. A. 98-2235, 1999 WL 358968, at *6 & n.9 (E.D. La. May 28, 1999) (reducing the lodestar to deduct hours spent on "client-required work that should not be borne by plaintiff," including a "telephone conference concerning insurance coverage"); *Baza v. Chevron Oil Serv. Co.*, No. 95-1574, 1996 WL 711506, at **3–5 (E.D. La. Dec. 10, 1996) (excluding hours spent pursuing insurance coverage for the claim because "there is neither a 'common core of facts' nor any 'related legal theories' between Chevron's claim for insurance coverage and its defense of the main action"); *Baseball at Trotwood, LLC v. Dayton Professional Baseball Club, LLC*, 493 F. Supp. 2d 972, 985 (S.D. Ohio 2005) (declining to award attorneys' fees for time spent seeking coverage from insurance carrier because this was not time advanced in support of the successful claim). The 9.7 hours spent on insurance coverage issues are disallowed.

24

The plaintiffs contend that the WLPOA and its trustees should not be permitted to recover fees incurred before the suit was filed.  (Docket Entry No. 44 at 7).  The billing records reflect that McConn and an associate billed 9.9 hours before this suit was filed, not including time spent on insurance coverage.  The billing records show that the lawyers spent this time after the WLPOA received a demand letter from counsel for the plaintiffs.  The hours billed before the complaint was filed were spent determining how to respond to that demand letter.  Neither McConn's affidavit, nor the reply that the WLPOA and its trustees and the Incorporation Committee filed in support of their fee application, describes the contents of the demand letter or the response.  There is no information in the record about whether the letter included § 1983 claims.  The plaintiffs cite no authority to support their argument that there is a *per se* bar to the recovery of fees incurred before suit was filed, particularly if those fees were incurred in responding to § 1983 claims.  But the WLPOA has not met its burden of showing that the attorneys' fees incurred before suit was filed related to their defense of § 1983 claims.  Accordingly, the 9.9 hours billed for time spent before this suit was filed are disallowed.

The plaintiffs also contend that Hays McConn billed too much time drafting a motion to dismiss that was never filed.  The plaintiffs contend that two lawyers billed 18 hours in drafting and reviewing the motion.  This court found only 12.9 hours of billing entries by one associate drafting a motion to dismiss between January 1 and January 7, 2009.  The original complaint was filed on July 25, 2008 and the WLPOA and trustees and the Incorporation Committee filed an answer.  The proposed amended complaint was filed on January 12, 2009.  The WLPOA and trustees and the Incorporation Committee did not oppose the filing of this complaint, although the Citizens' PAC and Aldrich did.  If the 12.9 hours was spent drafting a Rule 12(b)(6) motion to dismiss the original

complaint, the fees for this time are not recoverable because these defendants had already filed an answer.  The billing records show that Hays McConn also considered filing the motion under Rule 12(c), which could have been done after the answer was filed.  But if the draft was compiled in response to the original complaint, then Hays McConn has not explained why this motion was not filed before this court ruled on the sufficiency of the complaint in March 2009.  The motion to dismiss was not filed.  Because there is no basis to conclude that the time spent drafting the unfiled motion advanced the defense of the § 1983 claims, this time is not included in the lodestar, which is reduced by 12.9 hours.

The plaintiffs contend that a December 10, 2008 telephone conversation between plaintiffs' counsel and McConn, reflected in a billing entry, never occurred.  WLPOA and the trustees and the Incorporation Committee did not address this argument or the telephone conversation in their reply.  As a result, the lodestar is reduced by the 0.7 hours billed to the call.

The plaintiffs complain more generally that the Hays McConn billing entries are insufficiently specific, arguing that "they fail to state the specific factual details of the kinds and types of legal research, cases briefed, memorandum [sic] written, objectives obtained, names of persons involved, subject matters, and results obtained."  (Docket Entry No. 44 at 11–12).  These objections do not provide a basis for denying fees and for the most part do not merit a reduction in the hours expended.  This court has located 0.5 hours included in the billing records for which the entries are vague.  These 0.5 hours are not included in the lodestar.  The remaining billing entries contain the names of persons involved and the subject matter of the work performed.  The plaintiffs cite no authority that the additional details that they seek are necessary in a fee application, and the case law offers no support for this argument.  *See Kellstrom,* 50 F.3d at 326–27 ("[O]ur case law has

26

not precisely defined the appropriate standard," and "practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in detail the professional services rendered for each hour or fraction of an hour.").

The plaintiffs also object that the 20.9 hours billed to reviewing case documents, considering strategy, and talking with lawyers at Olson & Olson, counsel for the Citizens' PAC and Aldrich, were excessive or duplicative.  (Docket Entry No. 44 at 9–11).  This argument ignores the volume of the plaintiffs' filings and the large number of arguments they raised.  The time spent on review and strategy was not excessive.  Although hours billed for conferences between cocounsel are not generally recoverable by both counsel, the fee application submitted by Olson & Olson has been denied, so there is no double-billing issue.  The plaintiffs' objections do not provide a basis for a further reducing the number of Hays McConn hours.

The plaintiffs' briefing raised numerous concerns about the possibility of duplicative work by counsel for the WLPOA, trustees, and Incorporation Committee and counsel for the Citizens' PAC and Aldrich.  The plaintiffs contended that the Incorporation Committee and the Citizens' PAC had "identical members, purpose and objective," and faced identical issues in the suit.  (Docket Entry No. 44 at 6, 8).   Because the fee application for the Citizens' PAC and Aldrich has been denied,  there is no issue of duplicative work.

The record shows that McConn reasonably spent 42.8 hours in this case, a reduction of 15.1 hours from the 57.9 claimed.  This total, times the $175 hourly rate, is $7,490.  Associate MMG, whose reasonable hourly rate is $150 per hour, reasonably spent 2.7 hours, reflecting a reduction of 15.0 hours from the 17.7 claimed, for a total of $405.  Associate RMG, whose reasonable hourly rate is also $150, reasonably spent 17.1 hours, reflecting a reduction of 3.1 hours from the 20.2 claimed,

for a total of $2,565.  The lodestar for the attorneys for the WLPOA and its trustees and the Incorporation Committee is $10,460.

### C.    Adjustments to the Lodestar

A court calculating the amount of attorneys' fees to be awarded under § 1988 must take into account the purpose of such awards.  An award to a prevailing plaintiff is intended to make it easier for a plaintiff of limited means to bring a meritorious suit; an award to a prevailing defendant is intended to deter unfounded lawsuits, not to make the defendant whole.  *See Christiansburg*, 434 U.S. at 420.  The award should be adequate to deter baseless civil rights actions, but should not have a "chilling effect on the enforcement of civil rights."  *Myers v. City of West Monroe*, 211 F.3d 239, 292 n.1 (5th Cir. 2000).  In this case, as in other civil rights cases involving fee awards to prevailing defendants, a downward adjustment of the lodestar is appropriate.

Awards in similar cases are often reduced.  *See, e.g., Introcaso v. Cunningham*, 857 F.2d 965, 967–69 (4th Cir. 1988) (upholding a 90% reduction in the total fees that the defendant sought "in recognition of the possible chilling effect which a large award for attorneys' fees may have on future plaintiffs who may desire to resort to the Courts to vindicate their rights"); *Harris v. Fresenius Med. Care*, No. H-04-4807, 2007 WL 1341439, at **4–5 (S.D. Tex. May 4, 2007) (reducing fees for the defendants under § 1988 from $52,569 to $3,000 based on deficiencies in the defendants' billing records and to accomplish deterrent purpose while avoiding chilling effect); *Uherek v. Houston Lighting & Power Co.*, 997 F. Supp. 796, 798–99 (S.D. Tex. 1998) (awarding only $500 of the $17,105.40 in attorneys' fees sought under § 1988 because this "symbolic" amount was "more than enough to convince [the plaintiff] that there are real consequences for filing frivolous lawsuits").

28

The *Johnson* factors support a reduction in the lodestar.  Although the plaintiffs' filings were voluminous and the factual allegations extensive, the legal issues presented by the § 1983 claims were not novel, complex, or close.  There is no evidence that the attorneys for Fort Bend County, the WLPOA and its trustees, and the Incorporation Committee were precluded from other employment due to this case.  There is no evidence in the record that this was an "undesirable" case for the defendants' attorneys.  *See, e.g., Roach v. Schutze*, No. 7:02-cv-110, 2003 WL 21499371, at *3 (N.D. Tex. June 25, 2003) (reducing the lodestar because the claims "were not particularly novel or complicated," "did not require a particularly high level of skill to litigate," and "there [w]as no evidence that the attorneys had to decline other work in order to litigate the case"); *Botts v. Pruitt*, No. 1:94-cv-73, 1996 WL 671674, at *6 (N.D. Miss. July 24, 1996) (reducing the lodestar for similar reasons).  This court has already considered most of the other *Johnson* factors—the time and labor required, the skill required to perform the legal services properly, the customary fee, and the experience of the attorneys—in calculating the lodestar.  *Johnson*, 488 F.2d at 717–19.

A 50% reduction to the lodestar is appropriate in this case.  The lodestar for Fort Bend County's counsel is reduced from $13,290 to $6,645.  The lodestar for the attorneys for the WLPOA and trustees and the Incorporation Committee is reduced from $10,460 to $5,230.  The plaintiffs must pay total attorneys' fees of $11,875.

Counsel for the plaintiffs has submitted exhibits, including an affidavit, medical records, and bank statements, that tend to show his own impecunity.  (Docket Entry No. 44, Exs. A–G).  Counsel states that he "is neither seeking nor deserves mercy and sympathy.  However, all litigants, including the undersigned from which attorneys' fees are sought, have the absolute right to a fair, just, impartial, rational, reasonable, and unbiased decision by the judiciary."  (Docket Entry No. 47 at

15–16).  Although a court may not consider a party's indigency in determining whether fees should

be awarded, it may do so in determining the amount of fees.  *DeLeon*, 113 F. App'x at 578–79;

*Alizadeh*, 910 F.2d at 238–39.  "[T]he party against whom the attorneys' fees are to be assessed will

bear the burden of going forward and of persuasion," and should "support [its] request with

adequately detailed and comprehensive affidavits or similar 'evidence.'" *Alizadeh*, 910 F.2d at 239

n.7.  In the present case, however, the plaintiffs have not presented evidence of their own indigency,

but rather their attorney's.  "Section 1988 is not a vehicle by which to assess fees against a plaintiff's

attorney."  *LaVita v. Bloom*, No. Civ. A. 95-11822, 2001 WL 263255, at *3 (D. Mass. Feb. 27,

2001); *see also Roadway Express v. Piper*, 447 U.S. 752, 761 (1980) ("[Section] 1988 . . . makes

[no] mention of attorney liability for costs and fees."); *Brown v. Borough of Chambersburg*, 903

F.2d 274, 277 (3d Cir. 1990) ("[Section] 1988 does not authorize the award of attorneys' fees against

plaintiff's attorney.").  The sanctions provisions of 28 U.S.C. § 1927 allow a district court, in its

discretion, to require an attorney "to satisfy personally the excess costs, expenses, and attorneys'

fees reasonably incurred because of such conduct."  *See, e.g., Strain*, 23 F. Supp. 2d at 702–03

(assessing attorneys' fees against plaintiffs' counsel in a § 1983 action because the defendants

moved for such fees under 28 U.S.C. § 1927).  But none of the defendants in the present case has

moved for sanctions under § 1927.  The plaintiffs' evidence as to their attorney's impecunity is not

relevant for purposes of assessing fees under § 1988 and does not provide a basis for a further

downward adjustment to the lodestar.

Although the plaintiffs do not raise the issue, the fact that some of the defendants' briefing

addressed the plaintiffs' state-law claims does not provide a basis for a further downward adjustment

to the lodestar.  At the hearing on the plaintiffs' motion for a temporary restraining order, counsel

for the plaintiffs emphasized that the plaintiffs considered their state-law allegations to implicate

§ 1983:

>   THE COURT: [O]ther than the potential federal law violation or asserted federal law violation of [Texas Local Government Code § 7.006], you are not asserting any other federal claim, correct?
>
>   COUNSEL: Not to that statute, no, Your Honor.
>
>   THE COURT: Are you asserting any other federal claim? I'm not limiting it to that statute.
>
>   COUNSEL: Yes, we are . . . as to Section 1983, in that they have interfered with the right of the citizens to vote and violated their civil rights, and this Court has original jurisdiction of those civil right statutes.
>
>   THE COURT: And is your argument that every action taken that resulted in an individual who tried to vote, not voting, violated federal law?
>
>   COUNSEL: Yes, Your Honor.
>
>   THE COURT: That's pretty much everything you have argued then except for the question of how many places, permissible places was the notice of the election posted.
>
>   COUNSEL: Yes, Your Honor.[1]
>
>   THE COURT: Okay. That was my question. So basically your whole case, according to you, is a federal law case, except for that one issue?
>
>   COUNSEL: Yes, Your Honor.

---

[1] Although plaintiffs' counsel told the court at the hearing that the claims about posting notice of the election did not implicate federal law, the plaintiffs' later-filed amended complaint alleged that the inadequate notice was a "procedural due process" failure actionable under § 1983. (Docket Entry No. 27 ¶ 57).

(Docket Entry No. 10 at 31–32).  The defendants' briefing on the state-law claims was directed toward establishing the insufficiency of the plaintiffs' § 1983 claims.  The time spent on this work is properly included in the fee award under § 1988.

### D.     No Evidentiary Hearing is Required

The plaintiffs assert that they have a due process right to discovery and an evidentiary hearing on attorneys' fees.  The plaintiffs have requested "true and accurate copies of all original defendants' documents related to, connected with, and pertaining to their affidavits . . . [and] their billing statements for attorneys' fees."  (Docket Entry No. 47 at 5).  The plaintiffs also seek to take depositions, "limited in scope and time," of attorneys Bounds, Gallagher, Hightower, McConn, Morse, and William A. Olson, Sr.  (*Id.*).  The plaintiffs have offered in exchange to "produce all legal research documents, and all other documents pertaining to this lawsuit," and to "be subject to cross-examination by defendants' attorneys, and subject to questioning by this Court."  (*Id.* at 4).

A "court's failure to hold a hearing before ruling on the imposition of attorneys' fees" does not violate the due process rights of the party against which the fees will be assessed if "all the information upon which the ruling would be based [i]s already before the court."  *Alizadeh*, 910 F.2d at 236.  A hearing as to the amount of attorneys' fees is particularly unnecessary when, as here, "[all] parties had the opportunity to, and in fact did, submit detailed motions explaining their positions on the amount of the award."  *Id.* at 237 n.2; *see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 303 (1st Cir. 1995) ("[P]arties to a fee dispute do not have the right to an evidentiary hearing on demand.  When the written record affords an adequate basis for a reasoned determination of the fee dispute, the court in its discretion may forgo an evidentiary hearing.").

32

This court had extensive briefing, affidavits, and exhibits by the parties in deciding the fee issue. This court's ruling addresses the plaintiffs' lengthy and detailed objections, at length and in detail. The plaintiffs' chief complaint—that the legal representation of the WLPOA and trustees and the Incorporation Committee by one firm and of the Citizens' PAC and Aldrich by another was impermissibly duplicative—is moot because of this court's conclusion that counsel for the Citizens' PAC and Aldrich are not entitled to fees. This court has addressed the other factual issues that the plaintiffs have raised about the billing entries, deducting the time for some entries and significantly reducing the time for others. There is no due process issue in awarding fees in this case without discovery or an evidentiary hearing.

## V.   Conclusion

The plaintiffs' request for discovery and an evidentiary hearing on attorneys' fees is denied. Attorneys' fees are awarded to Fort Bend County in the amount of $6,645 and to the WLPOA, its individual trustees, and the Incorporation Committee in the amount of $5,230, for a total of $11,875. Attorneys' fees are denied to the Citizens' PAC and Aldrich.

SIGNED on July 23, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge